UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| EXCEL MARITIME CARRIERS LTD., *et al*. | ) | Case No. 13-23060 (RDD) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| ------------------------------------------------------------- | ) | |
| | ) | |
| THE OFFICIAL COMMITTEE OF UNSECURED | ) | |
| CREDITORS OF EXCEL MARITIME | ) | |
| CARRIERS LTD., *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Adversary No. _____ |
| | ) | |
| | ) | |
| EXCEL MARITIME CARRIERS LTD., | ) | |
| IVORY SHIPPING INC, and SEWARD & | ) | |
| KISSEL LLP | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

The Official Committee of Unsecured Creditors (the "Committee") of Excel Maritime

Carriers Ltd., et al. (collectively, the "Debtors"), respectfully files this complaint (the

"Complaint") pursuant to Bankruptcy Rule 7001 seeking a Declaratory Judgment that the

---

[1] The Debtors are Excel Maritime Carriers LLC, Excel Maritime Carriers Ltd., Amanda Enterprises Ltd., Barland Holdings Inc., Candy Enterprises Inc., Castalia Services Ltd., Centel Shipping Company Ltd., Coal Gypsy Shipco LLC, Coal Hunter Shipco LLC, Coal Pride Shipco LLC, Fianna Navigation S.A., Fountain Services Ltd., Grain Express Shipco LLC, Grain Harvester Shipco LLC, Harvey Development Corp., Ingram Ltd., Iron Anne Shipco LLC, Iron Beauty Shipco LLC, Iron Bill Shipco LLC, Iron Bradyn Shipco LLC, Iron Brooke Shipco LLC, Iron Fuzeyya Shipco LLC, Iron Kalypso Shipco LLC, Iron Knight Shipco LLC, Iron Lindrew Shipco LLC, Iron Manolis Shipco LLC, Iron Miner Shipco LLC, Iron Vassilis Shipco LLC, Kirmar Shipco LLC, Liegh Jane Navigation S.A, Lowlands Beilun Shipco LLC, Marias Trading Inc., Minta Holdings S.A., Odell International Ltd., Ore Hansa Shipco LLC, Pascha Shipco LLC, Point Holdings Ltd., Sandra Shipco LLC, Santa Barbara Shipco LLC, Snapper Marine Ltd., Tanaka Services Ltd., Teagan Shipholding S.A., Thurman International Ltd., Whitelaw Enterprises Co., Liegh Jane Navigation S.A., and Yasmine International Inc.

Escrow Funds, as defined below, deposited into escrow pursuant to the Escrow Agreement, as defined below, are unencumbered property of the Debtors' estates.  In support of this Complaint, the Committee respectfully states as follows:

## JURISDICTION

1.       This is an adversary proceeding brought pursuant to Rule 7001 of the Federal Rules Bankruptcy Procedure.

2.       This adversary proceeding is a "core proceeding" within the meaning of  28 U.S.C. § 157(b)(2).

3.       Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157, 1334 and 2201(a).

## PARTIES

5.       Defendant Excel Maritime Carriers Ltd. (the "Company") is a Liberian corporation, one of the above-captioned Debtors, and a party to an Escrow Agreement originally dated as of March 29, 2012, among the Company, Ivory Shipping Inc., and Seward & Kissel LLP as escrow agent (the "Escrow Agent") (as modified by amendments dated December 31, 2012, January 31, 2013, February 28, 2013, March 31, 2013, April 30, 2013 and May 31, 2013, the "Escrow Agreement").

6.       Defendant Ivory Shipping Inc. ("Ivory Shipping") is a Liberian corporation and party to the Escrow Agreement.   Ivory Shipping is affiliated with Gabriel Panayotides, the chairman of the Company's board of directors; his daughter, Ismini Panayotides, the secretary of the Company's board of directors; and certain other entities associated and/or affiliated with the Panayotides family

2

7.      Defendant Seward & Kissel LLP is a New York limited liability partnership and the escrow agent under the Escrow Agreement.

8.      Plaintiff, the Committee, was appointed by the Office of the United States Trustee for the Southern District of New York on July 10, 2013 pursuant to section 1102 of title 11 of the United States Code (the "Bankruptcy Code").  The Committee currently consists of four members: (i) Zazove Associates, LLC; (ii) Fidelity Investments; (iii) Silverback Asset Management, LLC; and (iv) Kayne Anderson Capital Advisors, L.P.

## FACTUAL BACKGROUND

**A.      The Company Incurred Debt Pursuant to a Senior Secured Credit Facility and Reached an Agreement with the Lenders to Defer Payments by First Attempting to Raise $30 Million in Equity.**

9.      The Company is a party to a senior secured credit facility, dated as of April 14, 2008, as amended (the "Syndicate Credit Facility"), with an alleged unpaid principal balance of approximately $771 million.

10.      The counterparties to the Syndicate Credit Facility are Nordea Bank Finland PLC, London Branch, as administrative agent (the "Administrative Agent"), and certain lenders from time to time as parties thereto (collectively, the "Lenders").

11.      The Company entered into a series of amendments to the Syndicate Credit Facility, including a March 30, 2012 fifth amendment ("Amendment No. 5"), pursuant to which the loan repayment schedule was modified to allow for, at the Company's option, the deferral of the repayment of some of the principal amount up to $100 million, from the originally scheduled due dates in 2012 and 2013, to the balloon payment at the end of the Syndicate Credit Facility's term in 2016.

12.     In connection with this amendment, the Company was required to attempt to raise at least $30 million in equity (the "Additional Equity") by December 31, 2012, through an offer and sale of newly issued equity of the Company.

**B.      The Company Acquired $20 Million from Ivory Shipping in Escrow.**

13.     On or about March 29, 2012, the Company also entered into a purchase agreement (the "Purchase Agreement") with Ivory Shipping.

14.     Pursuant to the Purchase Agreement, Ivory Shipping deposited $20 million (the "Escrow Funds") into an escrow account (the "Escrow Account").   The Escrow Funds and Escrow Account are governed the Escrow Agreement.

15.     The Escrow Agreement and the Purchase Agreement each contain an integration clause which provide that the Escrow Agreement and the Purchase Agreement "constitute the entire agreement between the parties with respect to the subject matter" thereof and "supersede all prior agreements and understandings, both oral and written, between the parties with respect to the subject matter" of the Escrow Agreement and the Purchase Agreement.

16.     The Purchase Agreement provides that the Escrow Funds "shall be disbursed by the Escrow Agent solely as provided for in the Escrow Agreement."

17.     In addition, pursuant to the Purchase Agreement, Ivory Shipping acknowledged that "the Escrow Agent may release the Escrowed Funds solely upon instruction by the Company," and that Ivory Shipping "has no rights under the Escrow Agreement, except to receive funds from time to time but only to the extent so instructed by the Company."

18.     Section 5 of the Escrow Agreement governs the distribution of the Escrow Funds. Pursuant to Section 5(a) through 5(e) of the Escrow Agreement, the Company could, subject to certain conditions, (a) direct the release of the Escrow Funds to itself provided that such funds would be used for the purchase of Class A common stock of the Company by an entity

designated by the Company (the "Designated Entity"), or (b) direct a release of the Escrow Funds directly to the Designated Entity.[2]

19.   Any release of the Escrow Funds pursuant to Sections 5(a) or 5(b) of the Escrow Agreement must have occurred, at the latest, "on the tenth Business Day after September 30, 2012."

20.   Distributions pursuant to Sections 5(c) or 5(d) of the Escrow Agreement originally must have occurred on or before the tenth business day after December 31, 2012.  This date was subsequently extended by amendments to the Escrow Agreement dated December 31, 2012, January 31, 2013, February 28, 2013, March 31, 2013, April 30, 2013 and May 31, 2013. Pursuant to the sixth and last amendment to the Escrow Agreement dated May 31, 2013, any release of the Escrow Funds pursuant to Sections 5(c) or 5(d) of the Escrow Agreement must have occurred on or before the tenth Business Day after June 30, 2013.[3]

21.   Any release of the Escrow Funds pursuant to Section 5(e) could occur only if the company has "successfully sold equity in an amount equal to $30,000,000" since the date of the Escrow Agreement.

22.   Because the conditions for release of the Escrow Funds pursuant to Section 5(a) through 5(e) have not been satisfied, the Company no longer has the right to direct the release the Escrow Funds pursuant to these provisions.

23.   However, pursuant to Section 5(f) of the Escrow Agreement, the Company may also authorize other release of the Escrow Funds to itself, in its absolute discretion,

---

[2] The recitals to the Escrow Agreement also state that, under certain circumstances, the Escrow funds shall be used to purchase Class A common stock of the Company.

[3] The time for distribution pursuant to Sections 5(a) or 5(b) of the Escrow Agreement was not extended by the amendments to the Escrow Agreement.

"notwithstanding the foregoing" provisions of the Escrow Agreement.  Specifically, Section 5(f)

of the Escrow Agreement provides:

> **Other Releases**.  ***Notwithstanding the foregoing***, from time to time [the] Escrow
> Agent shall make such distributions from the Escrowed Funds as the Company
> shall direct by written instructions . . . .

24.     This provision provided the Company with complete and absolute discretion over

the release and use of the Escrow Funds, and is now the only provision of the Escrow Agreement

which applies to the release of the Escrow Funds.

25.     Pursuant to the sixth amendment to the Escrow Agreement dated May 31, 2013,

Section 11(i) provides that, notwithstanding any other provision of the Escrow Agreement, "in

no event shall funds be released through, and including, the earlier of: (a) June 30, 2013; and (b)

the date (if any) on which US Bankruptcy Court or another court of competent jurisdiction enters

a final order requiring the release of such funds."

26.     Neither the Escrow Agreement nor the Purchase Agreement contains any other

restriction on the release of funds in connection with Section 5(f) of the Escrow Agreement.

Because June 30, 2013 has now passed, the Company has an unrestricted right to direct a release

of the Escrow Funds to itself, for any purpose.

27.     The Administrative Agent (acting on behalf of the Lenders) has not been granted

a security interest in (a) the Escrow Agreement or the Company's rights thereunder, (b) the

Escrow Account, which is not subject to an account control agreement to which the

administrative agent (acting on behalf of the Lenders) is a party, or (c) the Escrow Funds..

**C.      The Debtors Propose a Plan of Reorganization, and Enter into an Agreement to
Provide a Majority Interest in the Reorganized Company to Ivory Shipping in
Exchange for a Release of its "Rights" under the Escrow Agreement**

28.     On July 2, 2013, the Debtors filed a *Joint Prepackaged Chapter 11 Plan of*

*Reorganization of Excel Maritime Carriers Ltd. and Certain of its Affiliates* (the "Initial Plan").

On July 15, 2013, the Company filed a modified version of the Initial Plan (the "Plan") and the accompanying *Disclosure Statement with Respect to the Debtors' Joint Pre-Negotiated Chapter 11 Plan of Reorganization* (the "Disclosure Statement") [Docket No. 87].

29.     In connection with the Plan, the Lenders and Ivory Shipping entered into an agreement (the "Ivory Shipping Side Agreement") pursuant to which, among other things, Ivory Shipping will acquire 60% of the equity of a newly created Marshall Islands limited liability company that will hold all of the common stock of the reorganized Company pursuant to the Plan ("Excel Holdco") and acquire an option to increase its equity interest in Excel Holdco to 75% by making an additional investment of $20 million on or before March 31, 2015, subject to certain conditions.

30.     The initial consideration that will purportedly be provided by Ivory Shipping pursuant to the Ivory Shipping Side Agreement consists of (i) a $10 million payment, in the form of a note payable on the effective date of the Plan, and (ii) Ivory Shipping's agreement to "release all of its claims to and waive all of its rights in respect of the Escrow Funds." Disclosure Statement at 20-21.

## COUNT I
### (Declaratory Judgment)

31.     Plaintiff incorporates and realleges the allegations set forth in paragraphs 1–29 as if fully set forth herein.

32.     A justiciable controversy exists concerning the rights and obligations of the parties with respect to the Escrow Funds, in which the Committee has justiciable interest and which is ripe for adjudication.

33.     The issue of whether the Escrow Funds constitute property of the Debtors' estates is critical to a determination of the value being provided by Ivory Shipping for its proposed majority interest in the reorganized Company pursuant to the Plan and the Ivory Shipping Side Agreement, and specifically, whether the release of Ivory Shipping's purported "rights" to the Escrow Funds has any value at all.  The issue of whether the Escrow Funds are an unencumbered asset of the Debtors' estates is critical to a determination of the value of assets that are available to satisfy claims of the Company's unsecured creditors and to the formulation of any plan of reorganization of the Company.

34.     The Committee is entitled to a declaratory judgment that the Escrow Funds are unencumbered property of the Debtors' estates under 11 U.S.C. § 541.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     Declaring that the Escrow Funds are unencumbered property of the Debtors' estates within the meaning of 11 U.S.C. § 541;

2.     Awarding such other relief as the Court may deem just and proper.

Dated:  August 2, 2013                              Respectfully submitted,


                                        /s/ Sean E. O'Donnell
                                   Michael S. Stamer
                                   Sean E. O'Donnell
                                   Sunish Gulati
                                   Roxanne Tizravesh
                                   AKIN GUMP STRAUSS HAUER & FELD LLP
                                   One Bryant Park
                                   New York, New York 10036
                                   (212) 872-1000 (Telephone)
                                   (212) 872-1002 (Facsimile)
                                   mstamer@akingump.com
                                   sodonnell@akingump.com
                                   sgulati@akingump.com
                                   rtizravesh@akingump.com

                                        and

                                   Sarah Link Schultz (*admitted pro hac vice*)
                                   AKIN GUMP STRAUSS HAUER & FELD LLP
                                   1700 Pacific Avenue
                                   Suite 4100
                                   Dallas, TX 75201
                                   (214) 969-2800 (Telephone)
                                   (214) 969-4343 (Facsimile)
                                   sschultz@akingump.com

                                   *Attorneys for the Official Committee of Unsecured*
                                   *Creditors of Excel Maritime Carriers Ltd. et al.*